Syllabus.

81   281
27a  128
81   281
101a ³448
81   281
211  ⁵265

# DAVID HUEBSCH

## *v.*

# ELIZABETH SCHEEL *et al.*

1. RECORDING LAW—*priority from recording.* A junior mortgage, first recorded under the recording laws, will take precedence of a prior mortgage, and gives the first lien on the premises, unless the mortgagee therein, at the time he obtained his mortgage, had notice of the existence of the prior one.

2. MORTGAGE—*priority—promise to pay.* Where a mortgagee, whose mortgage is first recorded without notice of any prior one, on being informed of the other mortgage, and assured that it is a prior lien, and while under such belief, promised to pay it if certain persons would sign a note with him: *Held*, that the promise, under such circumstances, afforded no evidence of notice of the prior unrecorded mortgage at the time the second one was given.

3. SAME—*assumption of payment of second mortgage debt by holder of first mortgage.* Where mortgaged premises are sold and conveyed to a mortgagee having the prior lien, and he agrees, as a part of the consideration, to pay a mortgage debt which is second to his, a court of equity will require him to pay it, or order a sale of the land for its payment.

4. But where the mortgagor executes a deed to such mortgagee, not in payment of his mortgage but as an additional security only, the mortgagee will not be bound to pay a second mortgage debt, although his deed may recite that it is in consideration of his mortgage and the balance due on the second mortgage, and he may show by parol what was the real consideration.

5. PAROL EVIDENCE—*to show consideration of deed.* The grantee in a deed may show by parol evidence the real consideration for his deed, even though it may contradict recitals therein.

6. MERGER—*deed by mortgagor to mortgagee.* A deed by a mortgagor to a mortgagee, intended as additional security only, and not as a satisfaction of the mortgage, will not merge the mortgage in the greater estate, so as to give priority to another mortgage which is a second lien.

7. SAME—*general rule.* It is well settled that where a greater and less estate meet in the same person, a merger does not necessarily follow. That will depend upon the intent and interest of the parties, and if a court perceives it necessary, to advance the ends of justice, that the two estates shall be kept separate, it will so regard them.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Messrs. NŒTLING & HALBERT, for the appellant.

Messrs. G. & G. A. KŒRNER, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by appellees, executors of the estate of John Scheel, deceased, to foreclose a mortgage executed by Louisa Heimberger and her husband, on a certain lot in the town of Mascoutah, in the county of St. Clair, to secure a note given for $747 to John Scheel, in his lifetime. The appellant, who also held a mortgage on the same premises, was made a party defendant to the bill.

The only question that arises upon the record is, which of the two mortgagees holds the prior lien on the premises. On the hearing, the circuit court decreed in favor of Scheel, and this is assigned as error.

The mortgage given to Scheel was executed on the 31st day of March, 1858, but was not filed for record until the 26th day of November, 1858, while appellant's mortgage was executed on the 10th day of May, 1858, and filed for record on the 12th day of the same month. Appellant's mortgage, although last in date, having been first recorded under the recording laws of the State, would be a prior lien on the premises, unless appellant, at the time he obtained his mortgage, had notice of the existence of the prior unrecorded mortgage given to Scheel. It was, therefore, incumbent upon the complainants to establish, by satisfactory evidence, that appellant had such notice, before they would be entitled to a decree.

We have carefully examined the record, and the only evidence bearing upon this point tending to establish notice, is that of one of complainants, who says appellant had always, in conversations, admitted that the lien of Scheel was the first one.

This evidence is not directly to the point. The witness failed to testify that appellant admitted that he knew of the unrecorded mortgage when he acquired his lien; but, even if he had, his statement is met with a square denial by appellant,

who testified: " I did not, at any time, admit that Scheel's lien was first." So far as the record shows, the statements of appellant are entitled to as much credit as those of complainants. Each party had a direct interest in the result. Under such circumstances we do not feel justified in holding, in a controversy purely between two creditors, that the one who has been the more vigilant should lose the protection given him by the Recording Act of the State.

It is, however, urged by the complainants, that after appellant acquired a deed of the mortgagor, and after her death, appellant promised to settle the Scheel claim, provided his sons-in-law would consent, and sign a note with him, and that this has a bearing upon the priority of the claims.

This is, however, all fully explained. It appears that after the death of the mortgagor one of the complainants went to appellant, who is a man advanced in years and accustomed to do but little business, and told him that complainants had the prior lien, and before appellant had an opportunity to go to the records and ascertain the truth of the matter, he came a second time, and re-affirmed what he had before stated. Under these circumstances, appellant made an effort to get his sons-in-law to sign a note with him for the complainants' debt, which they declined to do, and the matter was thus terminated.

It appears, from the evidence, that subsequent to the execution and recording of the two mortgages, and on June 1, 1870, the mortgagor conveyed, by deed, the mortgaged premises to appellant, and that the deed contains a statement that the mortgage of appellant and the mortgage of complainants, for $450 balance, are a part of the consideration of the deed.

From this evidence it is claimed, that when appellant accepted the deed he became bound to pay complainants' mortgage, and upon default thereof the bill to foreclose would lie, even if appellant had no notice of the unrecorded mortgage at the time he acquired his.

If the mortgagor sold the mortgaged premises to appellant, and he agreed, as a part of the consideration, to pay the com-

plainants' mortgage, we have no doubt a court of equity would require the money to be paid or the lands sold under the mortgage in satisfaction of the debt.

But it is clear, from the evidence, that appellant did not purchase the mortgaged premises. The deed was made to him, not as a sale, but as additional security to the mortgage he held. We apprehend he had the right to show what the real consideration of the conveyance was, and parol evidence was competent for that purpose. *Kinzie* v. *Penrose*, 2 Scam. 515; *Sidders* v. *Riley*, 22 Ill. 109; *Booth* v. *Hynes*, 54 Ill. 363.

The justice of the peace who drew the deed, testifies that it was no part of the consideration of the deed that appellant should pay complainants' mortgage; that the mortgagor was in feeble health, and gave the deed in order that the grantee, in case she should not recover, could get the rents on the property without waiting two years by foreclosing his mortgage.

The witness stated, in reference to the clause in the deed in regard to consideration: "The only reason I mentioned in the deed, was to get over the clause in the deed that the premises were not encumbered."

The appellant, in his evidence, testified that he did not assume complainants' mortgage, and the deed was not made to satisfy his own mortgage, but its only purpose was to give him additional security on the property.

It is, therefore, apparent, from the evidence, that it was no part of the consideration of the deed that appellant was to pay or assume the complainants' mortgage, neither was the conveyance made in satisfaction of the mortgage held by appellant. The deed, therefore, did not affect the rights of the complainants, or appellant, under their mortgages, but, so far as priority was concerned between them, they occupied, relatively, the same position as they would had the deed never been executed. Nor was the mortgage of appellant extinguished by the conveyance or merged in the fee, as has been suggested. The object and intent of the deed seem, rather, to have been to give appellant additional security.

It is well settled that where a greater and less estate meet

in the same person, a merger does not necessarily follow. That will depend upon the intent and interest of the parties, and if a court perceives it necessary, to advance the ends of justice, that the two estates should be kept separate, it will so regard them. *Edgerton* v. *Young*, 43 Ill. 465; *Campbell* v. *Carter*, 14 Ill. 289; *Jarvis* v. *Frink*, id. 398.

So far as appears from this record, the appellant had a prior lien on the premises for the payment of his debt, and it was error for the court to decree otherwise.

The decree will, therefore, be reversed and the cause remanded.

*Decree reversed.*